1  Dirk O. Julander, Bar No. 132313
     doj@jbblaw.com
2  JULANDER, BROWN & BOLLARD
   9110 Irvine Center Drive
3  Irvine, California 92618
   Telephone:  (949) 477-2100
4  Facsimile:  (949) 477-6355

5  Attorneys for Defendants Barry Sender, an
   individual and Counterclaimant Carrol
6  Boyes US Distribution, Inc., a California
   Corporation

7

8

9

10                **UNITED STATES DISTRICT COURT**

11       **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

12

13  CARROL BOYES (PTY) LIMITED, a          Case No. 8:15-cv-00312
    South African Company,
14                                         **FIRST AMENDED**
                Plaintiff,                 **COUNTERCLAIM FOR:**
15
        vs.                                **1. Breach of Contract**
16                                         **2. Breach of the Covenant of Good**
    CARROL BOYES US DISTRIBUTION,          **Faith and Fair Dealing**
17  INC., a California Corporation; BARRY  **3. Franchisor's Failure to Register**
    SENDER, an individual; and UTi,        **Franchise [Corp. Code, §§ 31300,**
18  UNITED STATES, INC., a New York        **31110]**
    Corporation,                           **4. Franchisor's Failure to Deliver**
19                                         **Offering Circular [Corp. Code §§**
                Defendants.                **31300, 31119]**
20  _____
                                           **5. Franchisor Unlawfully**
21  CARROL BOYES US DISTRIBUTION,          **Terminated Franchise**
    INC., a California Corporation         **[Bus. & Prof. Code, § 20035]**
22                                         **6. Breach of Fiduciary Duty**
                Counterclaimant,           **[Against CB Limited]**
23                                         **7. Fraud and Deceit [Civ. Code §**
        vs.                                **1709]**
24                                         **8. Breach of Fiduciary Duty**
    CARROL BOYES (PTY) LIMITED, a          **[Against Mr. Thies]**
25  South African Company, CARROL
    BOYES, an individual, and DAVID
26  THIES , an individual,

27                Counterdefendants.

28



Counterclaimant, CARROL BOYES US DISTRIBUTION, INC., a California Corporation, alleges for its First Amended Counterclaim as follows:

## **PARTIES**

1.      Counterclaimant CARROL BOYES US DISTRIBUTION, INC., a California Corporation (hereinafter "Counterclaimant" or "CBUSD") is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of California with its principal place of business in Orange County, California.

2.      Counterclaimant is informed and believes and, based thereon, alleges that Plaintiff and Counterdefendant CARROL BOYES (PTY) LIMITED ("CB Limited"), registration No. 2007/008786/07, is an unknown South African entity doing intrastate business in the State of California but not registered with the Secretary of State.

3.      CBUSD alleges that Counterdefendant Carrol Boyes ("Ms. Boyes") is an individual residing in the South Africa, and is the sole shareholder and was at some operative times the Chief Executive Officer of CB Limited.

4.      CBUSD alleges that Counterdefendant David Thies ("Mr. Thies") is an individual residing in the South Africa and is or was the Chief Financial Officer of CB Limited.

5.      CBUSD is informed and believes, and based thereon alleges, that at all times herein mentioned, Ms. Boyes and Mr. Thies, and each of them, were and are (for purposes of the law of tort, contract and otherwise) agents, representatives, servants, associates, co-conspirators, and employees of CB Limited and its predecessors and successors-in-interest, and were acting within the course and scope of such capacities, within actual or apparent authority of such capacities, within the course and scope of such conspiracies, and with actual and/or constructive notice of the knowledge of their predecessors-in-interest and each other.

6.      CBUSD is informed and believes, and based thereon alleges, that Ms. Boyes is, and at all relevant times was, the sole owner and an officer of CB Limited

1  and there at all times existed a unity of interest between such Counterdefendants

2  such that any separateness between Ms. Boyes and CB Limited ceased to exist and

3  CB Limited is the alter ego of Ms. Boyes.  Adherence to the fiction of the separate

4  existence of CB Limited would permit abuse of the corporate privilege and would

5  sanction fraud and produce an inequitable result for the following reasons:

6         a.     CBUSD is informed and believes that CB Limited was and is a

7  mere shell and sham, without capital, assets, stock or stockholders and is used by

8  Ms. Boyes as a device to avoid individual liability;

9         b.     CBUSD is informed and believes that CB Limited is, and at all

10  relevant times was, so inadequately capitalized that, compared with the business

11  done by CB Limited and the risk of loss attendant thereto, its capitalization was

12  illusory;

13         c.     CBUSD is informed and believes that CB Limited was the alter

14  ego of Ms. Boyes in that Ms. Boyes used the assets of CB Limited for her own

15  personal use;

16         d.     CBUSD is informed and believes that CB Limited is a mere

17  shell, instrumentality and conduit through which Ms. Boyes carried on her business

18  to the extent that any individuality between Ms. Boyes and CB Limited does not

19  now, and at all relevant times, did not exist.

20         e.     CBUSD is informed and believes that CB Limited is, and at all

21  relevant times was, controlled, dominated and operated by Ms. Boyes in that the

22  activities of CB Limited were carried out without regard to corporate formalities

23  such as director or shareholder meetings, or minutes or resolutions maintained; and

24         f.     CBUSD alleges that adherence to the fiction of the separate

25  existence of CB Limited would permit abuse of the corporate privilege and would

26  sanction fraud and would produce an inequitable result.

27      7.     Hereafter, CB Limited and Ms. Boyes will sometimes be collectively

28  referred to as "CB Limited" unless otherwise expressly referred to separately.

## JURISDICTION AND VENUE

8.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §1367(a) and Federal Rules of Civil Procedure, Rule 13(a) insofar as this is a compulsory counterclaim.  This court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the parties have a diversity of citizenship and the amount in controversy in this matter, excluding costs and interest, exceeds the sum of $75,000.

9.      Venue is proper in this court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

10.      CB Limited designs and manufactures high-end housewares and lifestyle accessories with sculpted designs (the "Products"). These Products carry the Carrol Boyes mark and retail for premium prices.

11.      CBUSD's principal, Mr. Barry Sender, first began doing business with CB Limited through a retail store located in Orange County, California.  On October 18, 2010, Mr. Sender and CB Limited entered into a Licensing and Supply Agreement (the "Licensing Agreement") providing terms for Mr. Sender to open a retail store exclusively selling CB Limited's products.  Under that Licensing Agreement, CB Limited demanded and Mr. Sender agreed to pay "a license fee to CB of (five percent) 5% of the sales value of the Products sold each month."

12.      During the time that the parties were operating under the Licensing Agreement, Mr. Sender and CB Limited began discussing marketing and wholesaling the Products in the United States.  Mr. Sender negotiated the terms of the relationship with Mr. Thies and Ms. Boyes.

13.      In June 2012, CBUSD and CB Limited entered into the Exclusive Wholesale Licensing, Supply, Sales & Distribution Agreement (the "Distribution Agreement" or the "Agreement") setting forth terms for the exclusive wholesale distribution of the Products.  A copy of the Distribution Agreement is attached hereto as Exhibit 1, and incorporated herein by reference.

14.     Through the Distribution Agreement, CB Limited granted to CBUSD the exclusive right to be the wholesale distributor of CB Limited's Products within the United States.  The operation of CBUSD's business was always exclusively associated with CB Limited's trademarks, including CBUSD's name, its website and all other marketing and communications with its customers.

15.     In connection with the negotiations leading up to the Distribution Agreement, CBUSD agreed to and did transfer 5% of its common stock to CB Limited as an inducement to enter into the Distribution Agreement.  This was the same percentage required by CB Limited to be paid under the Licensing Agreement. Towards the end of the negotiations over the Distribution Agreement, Ms. Boyes and Mr. Thies made it clear that the additional rights of exclusive wholesale distribution would only be granted if Mr. Sender would provide an additional incentive to Ms. Boyes.  The parties discussed Mr. Sender transferring an ownership interest in CBUSD to one of Ms. Boyes's companies "as partial consideration" for entering into the Distribution Agreement.  Mr. Sender agreed and the parties entered in the Distribution Agreement.  Thereafter, counsel drafted a Subscription Agreement entered into as of August 30, 2012 (the "Subscription Agreement") whereby CBUSD agreed to transfer 10,000 shares of common stock, or about 5% of the company, to CB Limited's nominee, Carrol Boyes Corporation, in exchange for $100 "as partial consideration for Parent [CB Limited] entering into the Wholesale [Distribution] Agreement."  (Subscription Agreement, ¶1.)  CBUSD issued the stock but never received the $100 payment.  As a result, CB Limited was able to name a director to CBUSD's board of directors.

16.     Under the terms of the Distribution Agreement and over the course of dealing under that Agreement, CBUSD was required to and actually did engage in the wholesale distribution business under a marketing plan or system prescribed in substantial part by CB Limited in that CB Limited exercised control over CBUSD's decisions as to which retailers it could sell to, control over the pricing and selection

1  of Products for sale, control over one member of the CBUSD's board of directors,

2  control through almost daily instructions on CBUSD's sales efforts, control through

3  its provision of sales information, and control through its mandated use of the

4  "Trader" cash register system as the sole basis for reporting financial business

5  information.

6        17.    After securing this exclusive distributorship, CBUSD invested

7  substantial time and many hundreds of thousands of dollars establishing its business

8  in the marketplace.  In the first instance, CB Limited's previous wholesale business

9  operations in the United States were largely unorganized and its brand had been

10  undermined for many years by rogue vendors selling the Products.  CBUSD worked

11  tirelessly and beyond the scope of its obligations under the Distribution Agreement

12  to organize the wholesale operations and reclaim the "Carrol Boyes" brand.  Among

13  many other things, CBUSD:

14  •     Organized and oversaw audits of the Products in the various warehouses;

15  •     Created and thereafter revised a US Wholesale Catalogue, including an

16         electronic catalogue and Excel line sheet;

17  •     Removed South Africa care cards from the packaged Products, replaced them

18         with US care cards, applied US labeling and repackaged over 9000 Products;

19  •     Set up the Amazon website for sales of the Products and continue to maintain

20         the Products' presence on Amazon.com;

21  •     Processed the Products back to stock from the inventory received from CB

22         Limited's store closing in New York;

23  •     Participated in designing the Bloomingdale's Catalogue and created the

24         barcode labels and inner box masters and slaves for Products to be sold

25         through the Bloomingdale's stores;

26  •     Organized, packaged and prepared web inventory for relocation to the new

27         warehouse including applying SKU's, separating and boxing the Products;

28

FIRST AMENDED COUNTERCLAIM

- Worked to shut down the rogue retailers who were selling the Products at a discount on line and through other means including garage sales and flea markets; and

- Demanded and obtained CB Limited's agreement to correctly mark the Products' country of origin from South Africa, which was in most instances inaccurate, to India, China and Indonesia, as required by US law

18.     As a result of its efforts, in its first full year of operation CBUSD had sales of $343,498.  CBUSD's placement of the Products for the first time in Bloomingdale's was largely responsible for this success.

19.     That number would have substantially increased in 2014 but for the actions of CB Limited that caused CBUSD's gross sales to diminish below expectations.

20.     Under the Distribution Agreement, CBUSD agreed to generate "aggregate gross sales to Wholesale Market Purchasers" in 2014 of at least $500,000.  In early 2014, new management came in to CB Limited.  From that point on, CB Limited began to actively sabotage CBUSD's efforts to meet its targets and grow the business.

21.     CB Limited's most egregious conduct in this regard was its intentional misappropriation of internet sales from CBUSD in violation of section 3 of the Distribution Agreement.  This provision required CB Limited to pay CBUSD 10% of internet orders that were shipped to the US.  Mr. Sender first became suspicious that CB Limited was withholding internet orders in April 2014.  When he brought this up, Mr. Thies expressed embarrassment and told Mr. Sender the situation would be rectified.  No payment was ever received.  Then in October 2014, web sales dried up completely.  When Mr. Sender queried the head of e commerce for CB Limited, she lied saying they were having credit card processing problems.  Mr. Sender then queried Craig Ludwig the COO and he confirmed the lie.  When Mr. Sender then had two different people in the United States order from the CB Limited website,

1  each received shipments directly from CB Limited who made no attempt to account
2  for those sales to CBUSD.  When Mr. Sender confronted CB Limited with this
3  undebatable evidence disproving the lie about credit card processing problems, CB
4  Limited forwarded a spreadsheet showing internet sales in October through
5  December 2014.  Later, CB Limited forwarded another spreadsheet showing internet
6  sales from April 2014 through January 2105 CB Limited did not pay CBUSD for
7  any of these sales.

8       22.     Similarly, CBUSD is informed and believes and on that basis alleges
9  that during 2014 CB Limited supported and sustained "Trunk Shows" of its products
10  in the United States where orders were fulfilled in and shipped from South Africa
11  and not accounted for to CBUSD in violation of section 3 of the Distribution
12  Agreement.

13       23.     During 2014, CBUSD lost many sales because of CB Limited's failure
14  to deliver the Products in a timely manner.  CBUSD had placed the Products into
15  Bloomingdale's, a coveted retailer.  Bloomingdale's purchase orders have a clause
16  that automatically cancels the order if the Products are not received by the agreed
17  time.  CBUSD followed the agreed procedures in the Distribution Agreement for
18  such orders.  When CB Limited failed to ship Products sold to Bloomingdales,
19  CBUSD lost many thousands of dollars in sales that were automatically cancelled.

20       24.     In early 2014, CB Limited unilaterally increased its prices by a
21  substantial amount on many items in the US catalogue.  In January 2014, Mr.
22  Sender and Mr. Thies were discussing price reductions, including the reduction of
23  prices that were "very much apparently out of line."  Within a short time, Ms. Boyes
24  reversed course and implemented a substantial price increase, unilaterally and
25  contrary to Mr. Sender's advice and consent, based on her claim that the costs of the
26  Products had proportionally increased to her.  CBUSD is informed and believes and
27  based thereon alleges that the price increase was not based on an increase in cost of
28  production, but was part of CB Limited's effort to undermine CBUSD in its sales

1  and customer relationships.  As a result, CBUSD lost almost one-third of its

2  customers and, most significantly, lost approximately half of its projected sales to

3  Bloomingdale's.  Prior to the price increase, sales to Bloomingdale's alone were

4  projected to meet or exceed the $500,000 annual requirement.  After the price

5  increase, CBUSD was able to salvage only about half of this business.

6       25.    Compounding this problem, CB Limited for some time in 2014

7  advertised prices on its website for South Africa substantially lower than those

8  offered in the US market.  Even after accounting for the costs of shipping to the US,

9  the price differential was inexplicable and undermined CBUSD's efforts to justify

10  the price increase in the US.

11       26.    The CB Limited Products are the most expensive products in their

12  category at Bloomingdale's.  As such, the quality of those Products, including the

13  packaging and presentation, is critical to successful sales.  While all other

14  manufacturer's products in this category maintain very high standards for packaging

15  and presentation, Bloomingdale's representatives complained that CB Limited's

16  Products fell significantly short.  Its boxes were defective and made with poor

17  materials.  They could not withstand normal shipping and even the colored finish of

18  the boxes would transfer to customers' hands.

19       27.    In the Distribution Agreement, CB Limited warranted that its Products

20  would be free from defects in workmanship or materials.  CBUSD worked with

21  Bloomingdale's and tried to work with CB Limited to improve its packaging and

22  presentation.  Unfortunately, CB Limited failed to respond leaving its Products in

23  defective and substandard packaging reducing the sales CBUSD could otherwise

24  have made.

25       28.    CBUSD was prepared and greatly desired to take the Products into

26  additional wholesale opportunities.  CB Limited exercised control over CBUSD's

27  marketing efforts and vetoed lucrative retailers.  Specifically, CBUSD generated

28  interest by JC Penny and Bed, Bath and Beyond.  CB Limited refused to allow the

9

1  Products into these large retailers.  In addition, CBUSD sought to bring the Products

2  to a vast audience with the websites Wayfair.com and RueLaLa.com.  CB Limited

3  refused to allow CBUSD to sell to these sites for over a year and half.  At the end of

4  October 2014, CB Limited finally approved a launch of Products on Wayfair.com

5  but limited the Products that could be sold.  CBUSD has invested substantial money

6  and hours into preparing the data for sales on that site.  However, because of CB

7  Limited's delays, CBUSD missed the crucial holiday season for 2014.

8      29.   After sabotaging CBUSD's efforts for over a year, CB Limited sent a

9  letter terminating the Distribution Agreement effective February 17, 2015, and has

10  since then worked to take away the business and relationships that CBUSD spent

11  years and many hundreds of thousands of dollars to develop.  As part of the grounds

12  for the termination, CB Limited cited CBUSD's predictable failure to reach

13  $500,000 in sales for 2014.  But for CB Limited's fraud, interference and extra

14  contractual conduct limiting CBUSD's performance and opportunities, CBUSD

15  would have succeeded in meeting and even exceeding the minimum sales obligation

16  outlined in the Distribution Agreement.

17      30.   CB Limited also cited CBUSD's failure to pay $61,245.02 to CB

18  Limited as a ground for termination.  This claim relates to work that CBUSD

19  performed that was outside the scope of work as expressly defined in the

20  Distribution Agreement.  For work beyond that scope, section 2.2(b) provides: "Any

21  other payments due from one party to the other shall be separately invoiced by one

22  party and paid by the other party within seven (7) days of receipt of invoice."  From

23  the beginning of the Distribution Agreement in 2012, CBUSD performed services

24  outside the scope the Distribution Agreement and sent invoices totaling $87,337.64

25  for that work as described generally in paragraph 17 above.  For over a year and a

26  half CB Limited accepted the invoices without question and of course accepted the

27  benefit of CBUSD's work.  With CB Limited's approval, CBUSD paid those

28  invoices from the receipts of the sales.

31.     In early 2014, when new management came in to CB Limited, they raised questions about this practice for the first time.  Mr. Sender spent numerous hours addressing these issues and even spent several days in South Africa meeting with new management and Mr. Thies to resolve the issues over the payment of the invoices without agreement.

32.     After the February 17, 2015 letter, CB Limited cut CBUSD off from supply of its Products.  CBUSD is informed and believes that CB Limited has taken US sales and distribution for its own account.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract Against CB Limited)

33.     CBUSD alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 32 as though fully set forth herein.

34.     The Distribution Agreement was a valid and binding agreement between CB Limited and CBUSD.

35.     CBUSD has performed all covenants and obligations required on its part to be performed under the Distribution Agreement, except as excused by law or CB Limited's prior breach.

36.     CB Limited breached the Distribution Agreement by fraudulently misappropriating internet sales in violation of sections 1.1, 3.1 and 3.3; failing to timely deliver Products in violation of sections 1.4(a) and 2.3; unilaterally forcing price increases on CBUSD in violation of section 2.1; delivering Products in defective and substandard packaging in violation of section 1.4(b); unreasonably restricting retailers to which CBUSD could sell its Products in violation of section 1.2; terminating the Distribution Agreement without proper cause in violation of sections 4.1 and 4.2; consistently and persistently failing to pay CBUSD within seven days in violation of section 2.2(a); and usurping CBUSD's entire business in violation of the express and implied terms of the Distribution Agreement in its entirety.

37.     As a proximate result of CB Limited's breaches of the Distribution Agreement, CBUSD has been damaged in the amount of not less than $2,000,000.

## SECOND CLAIM FOR RELIEF

### (Breach of the Covenant of Good Faith and Fair Dealing
### Against CB Limited)

38.     CBUSD alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 37 as though fully set forth herein.

39.      The Distribution Agreement contains an implied covenant of good faith and fair dealing obligating the parties not to do anything to unfairly interfere with the right of the other party to receive the benefits of the agreement.

40.     CB Limited actively sabotaged CBUSD's efforts to meet its targets and grow the business as described more fully in paragraphs 20-28 above.  CBUSD is informed and believes and on that basis alleges that CB Limited acted consciously and deliberately in bad faith to unfairly frustrate the agreed-upon purpose of the Distribution Agreement with the intent to take for itself the business CBUSD developed under the Distribution Agreement.

41.     CBUSD has performed all of its duties and obligations required of it to be performed pursuant to the Distribution Agreement, except as excused by law or CB Limited's breach.

42.     As a result of CB Limited's breach of the implied covenant of good faith and fair dealing, CBUSD has been damaged in the amount of not less than $2,000,000.

## THIRD CLAIM FOR RELIEF

### (Franchisor's Failure to Register Franchise
### [Corp. Code, §§ 31300, 31110] Against All Counterdefendants)

43.     CBUSD alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 42 as though fully set forth herein.

44.     On or about June 21, 2012 at Mission Viejo, California, CB Limited and CBUSD entered into the Distribution Agreement **(Exhibit 1)** that by its terms and in its actual operation, described in paragraphs 13-16 above, amounted to a franchise agreement under the California Franchise Investment Law (the "CFIL") (Corp. Code § 31200) and the California Franchise Relations Act (the "CFRA") (Bus. & Prof. Code §20000, et seq.)

45.     Contrary to Corporations Code § 31110, Counterdefendants failed to register the offer of the franchise described above with the California Commissioner of Corporations before offering and selling it to CBUSD.

46.     CBUSD is informed and believe, and on that basis allege, that Counterdefendants' failure to register the offer of the franchise as described above was willful in that, CB Limited has deliberately avoided regulation by the State of California insofar as the Licensing Agreement, by its terms and in its operation, also amounted to an unregistered franchise agreement under the CFIL for which CB Limited also failed to deliver an offering circular and insofar as CB Limited is and has been conducting intrastate business in the State of California for many years but has not registered to do business with the Secretary of State.

47.     As a direct and proximate result of Counterdefendants' failure to register the offer of the franchise as described above, CBUSD has sustained damages in an amount to be proven at trial.

48.     CBUSD is informed and believes, and on that basis alleges, that, at all times mentioned in this counterclaim, Counterdefendants, Ms. Boyes and Mr. Thies, directly or indirectly controlled Counterdefendant CB Limited. Therefore, pursuant to Corporations Code section 31302, Counterdefendants Ms. Boyes and Mr. Thies are jointly and severally liable to CBUSD with and to the same extent as Counterdefendant CB Limited.

/ / /

/ / /

**FOURTH CLAIM FOR RELIEF**

**(Franchisor's Failure to Deliver Offering Circular**

**[Corp. Code §§ 31300, 31119] Against All Counterdefendants)**

49.     CBUSD alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 48 as though fully set forth herein.

50.     Contrary to the requirements of Corp. Code § 31119, Counter-defendants sold a franchise to CBUSD that was subject to registration under the CFIL without first providing CBUSD with a copy of the offering circular and copies of all proposed agreements relating to the sale of the franchise at least 10 business days prior to CBUSD's execution of the Distribution Agreement.

51.     CBUSD is informed and believes, and on that basis alleges, that Counterdefendants' failure to provide CBUSD with the documents described above was willful in that, CB Limited has deliberately avoided regulation by the State of California insofar as the Licensing Agreement, by its terms and in its operation, also amounted to an unregistered franchise agreement under the CFIL for which CB Limited also failed to deliver an offering circular and insofar as CB Limited is and has been conducting intrastate business in the State of California for many years but has not registered to do business with the Secretary of State.

52.     As a direct and proximate result of defendants' failure to provide CBUSD with the documents described above, CBUSD has sustained damages in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**

**(Franchisor Unlawfully Terminated Franchise**

**[Bus. & Prof. Code, § 20035] Against All Counterdefendants)**

53.     CBUSD alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 52 as though fully set forth herein.

54.     On or about June 21, 2012 at Mission Viejo, California, CB Limited and CBUSD entered into the Distribution Agreement **(Exhibit 1)** which by its terms

1 | and in its actual operation amounted to a franchise agreement under the CFRA as

2 | described in paragraph 13-16 above.

3 |     55.    Pursuant to the terms of the franchise contract, CBUSD's franchise

4 | continued without a fixed term.  On or about February 17, 2015, CB Limited

5 | notified CBUSD that the franchise was terminated immediately on the grounds that

6 | CBUSD had not met the annual sales target and had not paid money that CBUSD

7 | allegedly owed CB Limited.

8 |     56.    Counterdefendants' termination of CBUSD's franchise was not in

9 | accordance with Business and Professions Code sections 20020 or 20021 because

10 | Counterdefendants did not have good cause to terminate the Distribution Agreement

11 | as otherwise required by these statutes.

12 |     57.    As a direct and proximate result of the wrongful termination of the

13 | Distribution Agreement, CBUSD is entitled to recover its damages in the amount of

14 | not less than $2,000,000 pursuant to Business and Professions Code section 20037.

15 | **SIXTH CLAIM FOR RELIEF**

16 | **(Breach of Fiduciary Duty Against CB Limited)**

17 |     58.    CBUSD alleges and incorporates by reference each and every

18 | allegation contained in paragraphs 1 through 57 as though fully set forth herein.

19 |     59.    In the alternative, CBUSD and CB Limited engaged in a joint venture

20 | implied by their conduct acting together beyond the express and implied terms of

21 | the Distribution Agreement:

22 |     a.    In an effort to establish the "Carrol Boyes brand" here in the

23 | United States, CBUSD and CB Limited combined their property, skill, and

24 | knowledge with the intent to carry out this business enterprise;

25 |     b.    CBUSD and CB Limited each had an ownership interest in the

26 | business enterprise;

27 |     c.    CBUSD and CB Limited each had joint control over the business

28 | enterprise as CBUSD conducted the business and CB Limited exercised control over

most aspects of the business including control over CBUSD's decisions as to which retailers it could sell to, control over the pricing and selection of Products for sale, control over one member of the CBUSD's board of directors, control through almost daily instructions on CBUSD's sales efforts, control through its provision of sales information, and control through its mandated use of the "Trader" cash register system as the sole basis for reporting financial business information.  In addition, as part of the joint venture business enterprise, CB Limited directed and controlled CBUSD's activities beyond the scope of the Distribution Agreement as forth in detail in paragraph 17 above.  CB Limited also exercised control over the joint business through its ownership of 5% of the stock of CBUSD and thereafter the appointment of Mr. Thies as a member of CBUSD's board of directors; and

d.      CBUSD and CB Limited agreed to share the profits and losses of the joint business enterprise as expressed in their share of revenues from the sale of the Products with CB Limited bearing the risk of loss on the inventory.

60.      As a member of the joint venture, CB Limited owed CBUSD a fiduciary duty to act in the highest degree of fidelity and care with respect to the joint venture business.

61.      In its determination to obtain for itself the valuable and growing joint business enterprise, including the valuable relationship with Bloomingdale's and the valuable work done to put up the Products on Wayfair.com, CB Limited breached its fiduciary duty by actively sabotaging CBUSD's efforts to meet its targets and grow the business as described more fully in paragraphs 20-28 above.  CBUSD is informed and believes and on that basis alleges that CB Limited acted consciously and deliberately in bad faith to unfairly frustrate the agreed-upon purpose of the joint business enterprise with the intent to take for itself the business CBUSD developed under that enterprise.

62.      As a result of CB Limited's breach of fiduciary duty, CBUSD has been damaged in the amount of not less than $2,000,000.

## **SEVENTH CLAIM FOR RELIEF**

### **(Fraud and Deceit [Civ. Code § 1709] Against CB Limited)**

63.     CBUSD alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 62 as though fully set forth herein.

64.     Mr. Sender first became suspicious that CB Limited was withholding internet orders in April 2014.  When he brought this up, Mr. Thies expressed embarrassment and told Mr. Sender the situation would be rectified.  No payment was ever received.  Then in October 2014, web sales dried up completely.  When Mr. Sender queried the head of e commerce for CB Limited, she lied saying they were having credit card processing problems.  Mr. Sender then queried Craig Ludwig the COO and he confirmed the lie.  When Mr. Sender then had two different people in the United States order from the CB Limited website, each received shipments directly from CB Limited who made no attempt to account for those sales to CBUSD.  When Mr. Sender confronted CB Limited with this undebatable evidence disproving the lie about credit card processing problems, CB Limited forwarded a spreadsheet showing internet sales in October through December 2014.  Later, CB Limited forwarded another spreadsheet showing internet sales from April 2014 through January 2105 CB Limited did not pay CBUSD for any of these sales.

65.     CB Limited's claim that it was having credit card processing problems as a basis for not paying CBUSD its agreed portion of internet sales was the suggestion, as a fact, of that which is not true, by one who does not believe it to be true or who has no reasonable ground for believing it to be true.

66.     CB Limited's deceit caused CBUSD to lose money on internet sales it was otherwise entitled to.  As a result, CBUSD has been damaged in an amount according to proof at the time of trial.

/ / /

/ / /

/ / /

### EIGHTH CLAIM FOR RELIEF

#### (Breach of Fiduciary Duty Against Mr. Thies)

67.     CBUSD alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 66 as though fully set forth herein.

68.     As a member of CBUSD's board of directors, Mr. Thies owed a fiduciary duty to act in the highest degree of fidelity and care with respect to CBUSD's business.

69.     From early 2014, CB Limited began actively sabotaging CBUSD's efforts to meet its targets and grow the business as described more fully in paragraphs 20-28 above as part of its efforts to obtain for itself CBUSD's valuable and growing business, including the valuable relationship with Bloomingdale's and the valuable work done to put up the Products on Wayfair.com. CBUSD is informed and believes and on that basis alleges that CB Limited acted consciously and deliberately in bad faith to unfairly frustrate the agreed-upon purpose of the joint business enterprise with the intent to take for itself the business CBUSD developed under that enterprise.

70.     CBUSD is informed and believes and on that basis alleges that as an officer and employee of CB Limited, Mr. Thies knew, or in the exercise of ordinary care should have known, that CB Limited was engaged in this bad faith conduct. As a member of CBUSD's board of directors, Mr. Thies had a fiduciary duty to inform CBUSD about and to protect CBUSD from CB Limited's actions.

71.     Mr. Thies breached his fiduciary duty by failing to inform CBUSD about and to protect CBUSD from CB Limited's bad faith actions. As a result, CB Limited was able to sabotage CBUSD's sales creating a pretext for it to terminate the Distribution Agreement and usurp CBUSD's business. CBUSD is informed and believes and on that basis alleges that had Mr. Thies informed and protected CBUSD from CB Limited's bad faith actions, CBUSD would not have lost its business under the pretext of lack of sales.

72. As a result of Mr. Thies's breach of fiduciary duty, CBUSD has been damaged in the amount of not less than $2,000,000.

### PRAYER FOR RELIEF

WHEREFORE, CBUSD prays for judgment against Counterdefendants CB Limited, Carrol Boyes and David Thies, and each of them, as follows:

1. For compensatory damages in an amount to be determined according to proof at the time of trial, but not less than $2,000,000;

2. For prejudgment interest from the earliest date and at the highest rate permitted by law;

3. For exemplary and punitive damages according to proof;

4. For costs of suit herein incurred; and

5. For such other and further relief as the Court may deem just and proper.

DATED:  April 8, 2015                        JULANDER, BROWN & BOLLARD

By: _____
                                                          Dirk O. Julander
                                                          Attorneys for Defendant and
                                                          Counterclaimant Carrol Boyes US
                                                          Distribution, Inc., a California Corporation
                                                          and Barry Sender

FIRST AMENDED COUNTERCLAIM

# DEMAND FOR JURY TRIAL

Defendant Barry Sender and Counterclaimant, Carrol Boyes US Distribution, Inc., a California Corporation, demand a jury trial in the above-captioned matter.

DATED:  April 8, 2015                    JULANDER, BROWN & BOLLARD


By:  _____
      Dirk O. Julander
      Attorneys for Defendant Barry Sender and
      Counterclaimant Carrol Boyes US
      Distribution, Inc., a California Corporation

FIRST AMENDED COUNTERCLAIM

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Orange, State of California. My business address is 9110 Irvine Center Drive, Irvine, CA 92618.

On April 8, 2015, I served true copies of the following document(s) described as **FIRST AMENDED COUNTERCLAIM** on the interested parties in this action as follows:

Jeff E. Scott
Jordan D. Grotzinger
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 8, 2015, at Irvine, California.

Dorys Duran
Dorys Duran

---

FIRST AMENDED COUNTERCLAIM